UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

-----------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>BENJAMIN REUBEN ZALMAN-POLUN,<br><br>Defendant. | NOTICE OF MOTION RE:<br>EX PARTE CIPA 4 FILINGS<br><br>25-CR-153 (RJS-DBP) |

-----------------------------------------------------------X

PLEASE TAKE NOTICE, upon the annexed memorandum of law, that the defendant BENJAMIN REUBEN ZALMAN-POLUN, by his attorneys Jon Williams, Jeremy M. Delicino, and Sabrina Shroff, will move the Court, before the Honorable Robert J. Shelby, United States District Judge for the District of Utah, for an Order:

1. Directing the government to provide unredacted copies of its CIPA 4 filings to defense counsel.

2. Granting such other and further relief as the Court may deem just and proper.

DATED: Salt Lake City, Utah
August 3, 2026

_/s/ Sabrina Shroff_

Jeremy M. Delicino
Jon D. Williams
Sabrina P. Shroff
Counsel for Benjamin Zalman-Polun

_/s/ Adam Bridge_

Adam Bridge
Emily Stirba
Counsel for Marcel Malanga

*/s/ Trinity Jordan*

Trinity S. Jordan
Skye E. Lazaro
Counsel for Tyler Thompson, Jr.

CC: Clerk of the Court (RJS-DBP) (by ECF)

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -against- | : | 25-CR-153 (RJS-DBP) |
| BENJAMIN REUBEN ZALMAN-POLUN, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR ADVERSARIAL CIPA 4 FILINGS**

Jon Williams
Jeremy M. Delicino
Sabrina Shroff

Attorneys for Benjamin Reuben Zalman-Polun

TO: Melissa Holyoak
Acting United States Attorney
District of Utah
111 S Main Street # 1800
Salt Lake City, Utah 84111
By: Assistant U.S. Attorney Jonathan Stowers
Assistant U.S. Attorney Brian Whittaker

A. <u>The Court Should Not Permit the Government to Proceed *Ex Parte* Pursuant to CIPA Section 4</u>

Section 4 of CIPA states only that courts "*may* permit" the government to submit applications *ex parte*. *See* 18 U.S.C. App. 3 § 4 (emphasis added). Courts retain the discretion to reject such *ex parte* filings. As discussed further below, CIPA § 4 litigation in this case should be subject to the adversarial process. The Court should order the government to disclose un-redacted copies of its CIPA § 4 filings to cleared defense counsel.

B. <u>Overview of Relevant CIPA Sections</u>

Section 1 of CIPA defines "Classified information" as, *inter alia*, "any information or material that has been determined by the United States government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." Section 2 provides:

> At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution. Following such motion, or on its own motion, the court shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5 of this Act, and the initiation of the procedure established by section 6 of this Act. In addition, at the pretrial conference the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial.

18 U.S.C. App. 3 § 2.

"Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." 18 U.S.C. App. 3 § 3.

Section 4 of CIPA permits the government to delete, summarize, or substitute specified items of classified information before providing the items in discovery, but only "upon a sufficient showing" that full production would pose a reasonable danger to national security. 18 U.S.C.

App. 3 § 4. *See also United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) (the "state secrets" privilege to withhold information applies under CIPA Section 4 only if "there is a reasonable danger that compulsion of the evidence will expose … matters which, in the interest of national security, should not be divulged").

C. CIPA Section 4 Procedures

The Tenth Circuit has looked to the D.C. Circuit's decision in *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989), for the standard governing a district court's evaluation of a CIPA § 4 motion. *See United States v. Muhtorov*, 20 F.4th 558, 629 (10th Cir. 2021). *Muhtorov* supplies the controlling standard here, and under it the analysis proceeds in three steps. The district court first must ensure that the information the government seeks to protect "crosse[s] the low hurdle of relevance." *Yunis*, 867 F.2d at 623. Second, the court "should determine if the assertion of privilege by the government is at least a colorable one," thus preventing the government from "convert[ing] any run-of-the-mine criminal case into a CIPA action merely by frivolous claims of privilege." *Id*. Third, the district court must determine if the evidence is "material[ ]," meaning "helpful to the defense of an accused." *Id.* at 622 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).

Other circuits apply substantially the same standard. The Second Circuit, for instance, uses a four-step framework that asks whether the information is in fact classified as defined by CIPA § 1, whether it is discoverable, whether the "state secrets" privilege applies, and finally whether the information is "helpful or material" to the defense. *See United States v. Aref*, 533 F.3d 72, 79-80 (2d Cir. 2008). Because that materiality inquiry, like the one in *Yunis*, comes from *Roviaro*, the out-of-circuit authority discussed below is fully consistent with the standard governing in this Circuit and is offered as persuasive support for it.

If the material or information is deemed classified, the Court must next determine whether it is discoverable. CIPA was not intended to, and does not, change the government's discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), or the Federal Rules of Criminal Procedure. *See, e.g.*, *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) ("[CIPA] creates no new rights or limits on discovery of a specific area of classified information … [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information"), *quoting Yunis*, 867 F.2d at 621. Nor does CIPA alter the Federal Rules of Evidence.

Rather, the purpose of CIPA is to protect sensitive national security information, not to impede a defendant's Due Process rights. *See United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009). The Tenth Circuit has made clear that "helpful" is a lower standard than "exculpatory," and that a district court reviewing a CIPA § 4 application therefore cannot confine itself to looking for *Brady* material. *Muhtorov*, 20 F.4th at 629. The government's privilege must give way where the classified information would be "useful to counter the government's case or to bolster a defense," and the information "need not rise to the level that would trigger the Government's obligation under Brady v. Maryland [] to disclose exculpatory information." *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). Congress said as much in enacting CIPA, warning that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without the Act." S. Rep. No. 96-823, at 9 (1980). As explained by the District Court in *United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988):

> Congress was alert to the fact that special cases might create special problems. It made clear that in any case involving classified information the defendant should not stand in a worse position because of such information than he would have if there were no such statutory procedures. 1980 U.S. Code Cong. & Admin. News

> 4294, 4302. To this end, Congress commented that it expected the trial judge "to fashion creative and fair solutions" for classified information problems. Id. at 4301. At the same time, it emphasized that the Court should not undertake to balance the national security interests of the government against the rights of the defendant but rather that in the end remedies and sanctions against the government must be designed to make the defendant whole again. *Id.* at 4303. Thus while a limited opportunity for creative judicial adjustment of CIPA procedures exists, in the end, defendant's constitutional rights must control.

Thus, when information may be helpful or material to the defense, the classified material or information must be provided, but the Court may permit the government to make appropriate deletions or substitutions if it makes an application for leave to do so under CIPA § 4.

D. The Court Should Direct the Government to Disclose to Cleared Defense Counsel its CIPA Section 4 Submissions

Notably, while Section 4 authorizes a court to accept government pleadings *ex parte*, because § 4 states only that "[t]he court ***may*** permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone[,]" *id.* (emphasis added), there exists no categorical impediment to disclosure or adversary proceedings. Nothing in the statute permits the government to make such *ex parte* submissions as a matter of right. Rather, the use of the permissive "may" in the plain text of CIPA § 4, rather than the mandatory "shall," makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis.

Also, Congress patterned the *ex parte* provision of CIPA § 4 on a similar provision in Rule 16(d)(1) of the Federal Rules of Criminal Procedure, which governs protective orders in criminal cases. Rule 16(d)(1), too, does not use the words "must" or "shall." Instead, Rule 16(d)(l) states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. Congress amended the language of proposed Rule 16(d)(l) from requiring *ex parte* proceedings at the request of a party to permitting such proceedings. The House Judiciary

Committee observed that in determining whether to proceed *ex parte*, a court should "bear[] in mind that *ex parte* proceedings are disfavored and not to be encouraged." Rule 16, Fed. R. Crim. P., Advisory Committee Notes.[1]

In contrast, when Congress intends to *require ex parte* procedures in the national security setting, it knows how to articulate that mandate. For example, in the Foreign Intelligence Surveillance Act, Congress declared that the Court "shall" review FISA applications, orders, and related materials *ex parte* if the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security, *see* 50 U.S.C. § 1806(f) (2000)–something that has not occurred in this case.

As a threshold matter, *ex parte* proceedings are exceedingly disfavored. As the Sixth Circuit has cautioned, "[d]emocracies die behind closed doors." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002). As the Ninth Circuit has observed, "ex parte proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989).

By their very nature, *ex parte* proceedings impair the integrity of the adversary process and the criminal justice system. As the Supreme Court has recognized, "[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights…. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the

---

[1] *See also* S. REP. No. 96-823, at 6 (1980) (discussing the relation between CIPA § 4 and Federal Rule of Criminal Procedure 16(d)(l)); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984) (stating the purpose of CIPA § 4: "[t]he legislative history clearly establishes that these sections [CIPA §§ 4 and 5] were intended to make explicit the protective orders allowed for limitation of discovery of classified information pursuant to Federal Rule of Criminal Procedure 16"), *citing* S.REP. No. 96-823), *vacated and remanded on other grounds sub nom*, *United States v. McAfee*, 479 US. 805 (1986). Because CIPA § 4 affords at least as much protection for classified information as Rule 16(d)(l), discussion of § 4 necessarily subsumes Rule 16(d)(l).

case against him and opportunity to meet it." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, Due Process Clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring).

Similarly, in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004), the Second Circuit reemphasized the importance of open, adversary proceedings, declaring that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *Id.* at 321; *see also id.* ("[*e*]*x parte* submissions may generally *not* be received in opposition to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings").

As the Ninth Circuit observed in the closely analogous context of a "secret information" case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations…. [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) (internal quotation marks and citation omitted). Thus, to ensure both the appearance and the reality of fairness, it is respectfully submitted that this Court should not permit the government to proceed *ex parte* without first making an adequate showing of the need for such drastic measures. Given defense counsels' security clearance, and with CIPA § 4 offering guidance, at a minimum the government should be required to explain how sharing the information in question would endanger national

security. *See Libby*, 429 F. Supp. 2d at 4 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances").

Indeed, barring cleared defense counsel from participating in potentially crucial aspects of sentencing determinations cripples the adversary process without any commensurate benefit to national security. Nor is there any distinction between the type of clearance granted to defense counsel, and to judicial personnel or even prosecutors generally. Indeed, cleared defense counsel regularly review extremely sensitive classified information (via CIPA discovery) in the context of other national security cases.

Nor are defense counsel clairvoyant, and able to predict and blindly present to the Court the importance or completeness of the redacted information. Without access to either the classified evidence or the government's arguments for non-production, Mr. Zalman-Polun will be deprived of his right to counsel at this stage, and of the other Due Process rights to which he is constitutionally entitled at sentencing. Without defense counsel's participation in the process of evaluating the material, how can the defendant be said to have been placed in the same position as he would if this case did not involve classified material? Indeed, what is the purpose of appointing cleared counsel to begin with if the government is going to restrict what classified information is thereafter provided?

Also, given the uniqueness of this case, *ex parte* proceedings also present an overwhelming danger of erroneous decisions. Despite what defense counsel knows will be the Court's best efforts, the Court cannot properly function as Mr. Zalman-Polun's surrogate advocate since the Court has not been in the position to immerse itself in the evidence, or to necessarily

place it in the same context that might be presented by the defense. Thus, adherence to the adversarial process will be considerably more beneficial to the accuracy of decision-making in this instance. It is not the Court's function, but defense counsel's, to be the vigorous advocate on behalf of Mr. Zalman-Polun and point out any deficiencies in the government's submission.

In *United States v. Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006), in deciding whether to close a hearing to the public because of potential classified information, the District Court explained:

> It is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims.

*Marzook*, 412 F. Supp.2d at 921 (cleaned up).

Likewise, in *Alderman v. United States*, 394 U.S. 165 (1969), the Supreme Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to its case against the defendants. The Court rejected the government's suggestion that the district court make that determination *ex parte*, observing:

> An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.

*Alderman*, 394 U.S. at 182.

For the reasons outlined above, courts necessarily lack familiarity with "the information contained in *and suggested* by the materials," *Alderman*, 394 U.S. at 184 (emphasis added), both of which the government seeks here to withhold. The Court, which has not had an opportunity to consult with the defense with respect to the redacted material, cannot be expected to surmise the

nuances of the defendant's perspective on the information, nor whether information is entirely absent from the government's submission for which the defense has a reasonable basis to believe should have been included. As the Supreme Court has recognized, "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

Accordingly, it is respectfully submitted that the government should be required to disclose the redacted information to cleared counsel or make a "sufficient showing" that full production to cleared counsel would pose a reasonable danger to national security. 18 U.S.C. App. 3 § 4. Indeed, we respectfully submit that there is no sensible reason why disclosure of the government's *justification* for its redactions would implicate national security, especially when they could be provided to defense counsel subject to an appropriate protective order.

Such practice is not inconsistent with the Second Circuit's opinion in *Abu-Jihaad*. While in that case the Court noted that "where the government moves to withhold classified information from the defense, an adversarial hearing with defense knowledge would defeat the very purpose of the discovery rules[,]" *Abu-Jihaad*, 630 F.3d at 142, *citing Aref*, 533 F.3d at 81 (internal quotation marks omitted), the Court nevertheless acknowledged that trial judges retain discretion to reject *ex parte* filings under CIPA § 4. Indeed, in *Abu-Jihaad* the Second Circuit characterized the defense's opposition as a "challenge to the district court's exercise of *discretion* to proceed *ex parte*," and reviewed the District Court's decision to accept an *ex parte* filing under an abuse of *discretion* standard. *Id.* (emphasis added).

In *United States v. Libby*, 429 F.Supp. 2d 18 (D.D.C. 2006), *amended by* 429 F. Supp.2d 46 (D.D.C. 2006), the District Court also recognized its discretion to reject *ex parte* § 4 filings. In *Libby*, the Court established a procedure for evaluating the necessity of an *ex parte* § 4 filing,

requiring that any government submission under § 4 must necessarily include a declaration or affidavit, executed by an intelligence community official with the requisite classification authority, that (1) describes the reasons for the classification of the information at issue; (2) sets forth the potential harm to national security that could result from its disclosure; and (3) explains why the defense, based upon appropriate classification guidelines, does not have a "need-to-know" the information in its unaltered form. *See Libby*, 429 F.Supp. 2d at 25; *see also Libby*, 429 F. Supp. 2d at 48 (in amended order clarifying that "if the Court concludes that an ex parte filing should be served on the defendant, and thus requires disclosure of classified information, it will afford the government the opportunity to appeal the decision pursuant to Section 7 of the CIPA, or, if appropriate, with the [§ 4] motion").

The District Court in *Libby* added that, "[u]pon receipt of such a filing, the Court will review it and determine whether the filing should remain ex parte, or whether all or some portion of it should [be] provided to the defendant." *Id.* Similarly, in *Bostan v. Obama*, 674 F. Supp. 2d 9,27 (D.D.C. 2009), a Guantanamo Bay habeas case, the Court adopted the same procedure for evaluating *ex parte* submissions under CIPA § 4.

E. Conclusion

For the foregoing reasons, Mr. Zalman-Polun respectfully requests that the Court direct the government to provide cleared counsel with a fully unredacted version of its classified CIPA § 4 submission, or, at a minimum, set forth with particularity the potential harm to national security that could result from disclosure to counsel and explain why the defense does not have a "need-to-know" the information in its unaltered form.

DATED: Salt Lake City, Utah
August 3, 2026

*/s/ Sabrina Shroff*

Jeremy M. Delicino
Jon D. Williams
Sabrina P. Shroff
Counsel for Benjamin Zalman-Polun

*/s/ Adam Bridge*

Adam Bridge
Emily Stirba
Counsel for Marcel Malanga

*/s/ Trinity Jordan*

Trinity S. Jordan
Skye E. Lazaro
Counsel for Tyler Thompson, Jr.